J-S64033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANKLIN D. ROADMAN | : | |
| | : | |
| Appellant | : | No. 870 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 16, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0001481-2018

BEFORE:  BOWES, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED DECEMBER 11, 2019**

Franklin D. Roadman (Roadman) appeals from the judgment of sentence entered in the Court of Common Pleas of Fayette County (trial court) following his jury conviction of one count of person not to possess a firearm.[1]  Roadman challenges the trial court's denial of his motion to suppress.  We affirm.

In the early morning hours of April 13, 2017, Pennsylvania State Police officers arrived at the mobile home where Roadman resided to execute an arrest warrant in a separate case.  Because police had received information that Roadman's arrest may involve dealing with explosives, booby traps or

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).  Roadman was not permitted to possess a firearm because of previous burglary and kidnapping convictions.

other devices of that nature, members of the Special Emergency Response Team (SERT) and of the Hazardous Device and Explosives Section (HDES) assisted with the arrest. Roadman exited the mobile home after SERT personnel used a flash bang. Once Roadman was in custody, Pennsylvania State Police Corporal Jason Scholl of HDES and members of SERT conducted a safety sweep of the mobile home and cleared it for any individuals or hazards. Although the officers did not encounter any explosive devices, Corporal Scholl did observe a rifle and crossbow in plain view. The firearm was located in a bedroom, leaning among clothes in a closet.

Later that morning, Corporal Joseph Ross obtained a search warrant for the mobile home, to seize any rifles, ammunition, handguns or other prohibitive weapons. He assisted in the search of Roadman's residence and recovered several firearms and rounds of ammunition.

Claiming that the initial police entry into his mobile home was illegal, Roadman filed a pre-trial motion to suppress evidence. After a hearing, the trial court denied the motion, finding that the protective sweep of the home was justified. A jury found Roadman guilty of the above-mentioned offense. On May 16, 2019, the trial court sentenced him to a term of not less than five nor more than ten years' incarceration. Roadman timely appealed and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

Roadman challenges the trial court's denial of his motion to suppress, arguing the initial search of his mobile home was illegal. He contends that

once he exited the home and surrendered to police, a protective sweep of the home was not justified, where the testimony demonstrated that he lived alone, was reclusive, and he was arrested outside of the residence. (**See** Roadman's Brief, at 4-10).[2]

Pursuant to the Fourth Amendment of the United States Constitution made applicable to the states by the Fourteenth Amendment:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"Generally, the police will be excused from compliance with the warrant and probable cause requirements of the Fourth Amendment to the United

---

[2] Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. . . .

In addition, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing.

*Commonwealth v. Andrews*, 213 A.3d 1004, 1014 (Pa. Super. 2019) (citations omitted).

States Constitution in only limited circumstances." *Commonwealth v. Potts*, 73 A.3d 1275, 1280 (Pa. Super. 2013), *appeal denied*, 73 A.3d 1275 (Pa. 2013) (citation omitted). "Police may perform a 'protective sweep' as an incident to a lawful arrest, in order to protect the safety of police officers and others." *Commonwealth v. Hall*, 199 A.3d 954, 959 (Pa. Super. 2018), *appeal denied*, 206 A.3d 1028 (Pa. 2019) (citation omitted). "In such circumstances, officers may look into spaces immediately adjoining the place of arrest from which an attack could be immediately launched without any degree of suspicion other than that necessary to support the arrest." *Id.* (citation omitted). "A protective sweep beyond such immediately adjoining areas is proper if police can articulate specific facts to justify a reasonable fear for the safety of police officers or others." *Id.* (citation omitted). "We consider the information available to police at the time of the sweep from the perspective of a reasonably prudent police officer." *Id.* (citation omitted).

Instantly, the testimony at the suppression hearing was that personnel from both SERT and HDES were called to assist with Roadman's arrest because there "could possibly be pipe bombs or explosive[s] in the house that he may have had or built." (N.T. Suppression, at 8). Corporal Scholl testified that it is not typical for his division to assist in executing an arrest warrant, usually only assisting when there is information that police may be "dealing with explosives, booby traps, anything along those lines," as was the case with Roadman. (*Id.*). Corporal Scholl further explained that his "job is not to go

in to arrest," and that he "go[es] in there to keep everybody safe." (*Id.* at 9). He testified that once Roadman was in custody, following protocol, he and a few SERT members "went in the trailer . . . and cleared it for any hazards or individuals . . . [and to] make sure there is no[t] any type of homemade explosives, any labs, any type of bomb making materials[.]" (*Id.* at 11; *see id.* at 12). The corporal then observed the rifle in plain view. (*See id.* at 12-13).

After review of the record, we agree with the trial court's conclusion that it was a matter of officer and public safety to ensure that there was not a live bomb in the mobile home that could detonate. Therefore, the articulable facts reasonably supported the officers' belief that the protective sweep of Roadman's mobile home was necessary to protect their safety and public safety. The trial court properly denied Roadman's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2019